Monte L. Haney
Corcoran State Prison
P.O. Box 3476
Corcoran, CA 93212
In Pro Per

IN THE DISTRICT COURT

FOR THE NORTHERN DISTICT OF CALIFORNIA

MONTE L. HANEY,
       PETITIONER,
        V.
DERRAL G. ADAMS, WARDEN,
       RESPONDENT.

No. C07-4682 CRB (PR)

TRAVERSE     **FILED**

SEP 1 2 2008

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Petitioner Monte Haney, in Pro Per, by way of Traverse to Respondent's Answer, alleges as follows:

**1**

Petitioner admits that he is in custody as stated by Respondent. However, Petitioner contends that his custody is "unlawful" for the reasons set forth herein and in the Petition for Writ of Habeas Corpus and supporting exhibits.

**2**

Petitioner Denies Respondent's conclusion that State court Rulings were not Based on an unreasonable determination determination of facts or were not contrary to or involved an unreasonable application of clearly established United States Supreme Court Precedent.

Petitioner contends that he is entitled to relief on the following grounds, as set forth in the Petition:

Ground one: trial counsel was ineffective Because he failed to object to the Prosecutors use of The Preemptory challenges Based on race.

Pg 1 of 1 27

1  Ground two: Prosecutor misconduct because he used the
2  Preemptory challenges to exclude potential Jurors based
3  on Race.
4  Ground three: the trial court's refusal to instruct on
5  a Lesser included offense to torture violated defendants
6  due Process

7                          3

8  Petitioner Agrees with the Respondent that that he
9  exhausted his claims in the state court and that
10 the Petition is timely within the meaning of 28 U.S.C. §
11 2244.
12  I. II. III. . I.C., II B. , III B. Petitioner Denies and
13 Disagrees with the Respondent and State Court Conclusions
14 as set forth in the Respondent's memorandum of
15 Points and Authorities. Pages 5 to 13.

16                         4

17 Habeas relief, including but not limited to an evidentiary hearing
18 should be granted, for the reasons set forth in the Petition
19 and in the Points and Authorities in support of the traverse.

20                         5

21 Admitted that the AedPA Controls the disposition of this case.
22 however, Petitioner contends that the state court denials
23 of his habeas claims are contrary to, and result from an
24 unreasonable determination of, clearly established Law as
25 Promulgated by the U.S. Supreme Court, and are a Product
26 of an unreasonable determination of the facts.

PJ 2 of 4   27                         6

1    Petitioner is entitled to relief on the claims set forth

2    in 2

3                                    7

4    Acknowledged.

5                                    8

6    Wherefore, Petitioner respectfully requests:

7    (1) that an evidentiary hearing be granted on grounds 1, 2,

8    and 3:

9    (2) that the court grant the writ of Habeas corpus;

10    (3) all other appropriate relief.

11

12    Dated: 9-5-08

                        Respectfully Submitted,

13

14    _____

15    MONTE L. HANEY

16        in Pro Per

17

18

19

20

21

22

23

24

25

26

27

Pg 3 of 24

COURT PAPER
STATE OF CALIFORNIA
STD. 113  (REV. 8-72)

85 34769

Table of Authorities

| Cases | Page |
|---|---|
| Strickland v. washington 466 U.S. 668 (1984) | 5, 6, 7 |
| Batson v. kentucky 476 U.S. 79 (1986) | 8 |
| Johnson v. california 545 U.S. 162 (2005) | 8, 9, 11 |
| Pavlino v. castro 311 f.3d 1083 (9th cir. 2004) | 8, 10 |
| Avery v. Ga 345 U.S. 559, 561 (1953) | 9 |
| Miller-EL v. Dretke 125 s.ct 2317, 2340 (2005) | 9 |
| Oneal v. McANINCH 513 U.S. 432 (1995) | 11 |
| Evitts v. Lucey 469 U.S. 387 (1985) | 11, 12 |
| Gardner v. california 393 U.S. 367 (1969) | 12 |
| U.S. v. gaudin 515 U.S. 506 (1995) | 13 |
| James v. Kentucky 466 U.S. 341 (1984) | 13, 14 |
| francis v. franklin 471 U.S. 307 (1985) | 14 |
| Sandstrom v. Montana 442 U.S. 510 (1979) | 14 |
| Ho v. carey 332 f.3d 587 (9th cir. 2003) | 14 |
| carella v. california 491 U.S. 263 (1989) | 14 |
| U.S. v. sarvet s.tty 107 f.3d 1405 (9th cir. 1997) | 15 |
| crane v. kentucky 476 U.S. 683 (1986) | 15 |
| Penry v. Johnson 532 U.S. 782 | 16 |
| fiore v. white 531 U.S. 225 (2001) | 16 |
| Keeble v. U.S. 412 U.S. 205 (1973) | 16 |
| williams v. Taylor 529 U.S. 420 (2000) | 18 |
| williams v. Taylor 529 U.S. 362 (2000) | 17 |
| Taylor v. Maddox 366 f.3d 992 (9th cir. 2004) | 18 |
| townsend v. Sain 372 U.S. 293 (1963) | 19 |
| Eskridge v. washington Prison Bd 357 U.S. 214 (1958) | 20 |
| Kennedy v. Lochyer 379 f.3d 1041, 1054 (9th cir. 2004) | 21 |
| ortiz v. stewart 149 f.3d 923, 934 (9th cir. 1998) | 22 |
| BaJa v. Ducharme 187 f.3d 1075, 1078 (9th cir. 1999) | 22 |
| Duncan v. Lai 88 S.ct 1444; 391 U.S. 145 (1968) | 23 |
| Statutes. fed. R. Crim. P. 52 (b) | 7, 13 |
| Mayer v. city of chicago 404 U.S. 189 (1971) | 20 |

memo of Pts and Auths in Support of traverse

Huney v. adams. warden
LOT-4682  CRB (PR)

Corcoran state Prison
P.O. Box 3476
Corcovall. CA 93212
In Pro Per

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Monte L. Haney,
      Petitioner,

v.

Derral g Adams warden,
      Respondent.

No. C 07-4681 CRB (PR)
Points and authorities
in support of traverse

## PRELIMINARY STATEMENT

Petitioner was charged in Sanfrancisco Superior court with Aggravated mayhem cal. Pen. code § 205, torture cal Pen code § 206 Assault cal. Pen code § 245 and cal Pen code § 12022.7. Subsequently the Jury reached verdicts of Guilty on all counts. During the trial Petitioner established that he had a Long term methamphetamine abuse and substantial impaired brain functioning. (see exhibit K).

## statement of pertinent facts

at Pg 1 to 4 of Respondent's memorandum of Points and Authorities. Respondent reproduces essentially verbatim the statement of facts set forth in the first district appellate court's written opinion of Petitioners appeal. there do not appear to be any transcription errors Petitioner maintains that the facts which this court should consider to be established at trial are those in the Jury voir dire and Juror Questionaire Proceedings and the state court collateral Proceedings as referenced in the exhibits within the Points and authorities IN support of the traverse. (see exhibit B)(see exhibit D)

Pg 4 of 24

## LEGAL ARGUMENT
## INEFFECTIVE ASSISTANCE OF COUNSEL
## TRIAL COUNSEL

Petitioners trial counsel was ineffective During The Jury Selection because he failed to object to the Prosecutor's use of the Premptory challenges in a Discriminatory manner. This violated Petitioner's Right to the effective assistance of counsel as guaranteed by 6th and 14th amendments to the U.S. Constitution. See Strickland v. Washington, 466 U.S. 668 (1984) (see exhibit #) During the Jury Selections the Prosecutor excluded the only two African American Potential Jurors...Based on Race and my trial Attorney Randy Montesano failed to object to the Prosecutor's Discriminatory use of the Preemptory challenges which "Prejudiced" the defendant Because Petitioner could not Preserve the issue on appeal. See strickland v. washington at 466 u.s. 686 actual "Conflict of interest" adversely affecting Lawyers performance renders assistance ineffective. a "wheeler error" which happened in this matter Requires that a Conviction Be set aside. any competent attorney would have objected to the Prosecutor's exclusion of African American Potential Jurors based on Race but my trial Attorney failed to. Counsel's Performance fell below an objective standard of reasonableness because as a result of Counsel's Deficient Performance I was Prejudiced because I could not raise a "wheeler error on appeal" and if

1  I would have Been able to Raise the wheelor error
2  on  appeal I would have Received an automatic
3  Reversal as the wheelor Law Requires. see strickland
4  v. washington at 466 U.S. 685 The sixth amendment
5  recognizes the right to the assistance of counsel
6  because it envisions counsel's playing a role that is
7  "critical to the ability of the adversarial system to
8  produce Just Results" when the Prosecutor used
9  the Preemptory challenges to exclude two African
10 American Jurors Based on race my trial Attorney
11 Consented and did not object. my trial Attorney
12 has Been employed as a Lawyer for over fifteen
13 Years and it is my contention he knew that a
14 wheelor error reQuives a Automatic reversal
15 the DePuty Attorney Generals contention that my
16 claim of ineffective assistance of counsel does not
17 have merit is not true. (see Attorney General's memorandum
18 of Points and authorities Pg 12 Line 3 and 4). the Attorney
19 General Argues that it would have been futile
20 for my trial Attorney to object to a "wheelor error"
21 and the Prosecutors Purposeful exclusion of the only
22 two Black Potential Jurors available,,, which
23 the Attorney General's statement is contrary to
24 established Law that a Batson/wheelor error Requires
25 automatic Reversal of a conviction.(see A.G. memorandum
26 of Points and Authorities Pg 13 Line 3 and 4) the DePuty
27 Attorney General has applied a overly stringent standard
28 of Determining an ineffective assistance of counsel

1  Claim see Strickland v. Washington at 466 U.S. 697 + 698
2  since fundamental fairness is the central concern of the
3  writ of habeas corpus "no special standards" ought to
4  apply to ineffectiveness claims made in habeas Pro-
5  ceedings. it is established U.S. Supreme Court Law that
6  the Right to Counsel is the Right to the effective
7  assistance of counsel. See Strickland v. Washington
8  at 466 U.S. 686 "the right to counsel is the right to
9  the effective assistance of counsel". when trial
10  counsel failed to object to the Prosecutor's exclusion
11  of one hundred Percent of African Americans During
12  the Jury Selection based on race he Caused a
13  Plain error which Prejudiced the defendant
14  because trial counsel omissions caused a
15  fundamental constitutional error to the Petitioner
16  because I could not raise a Batson/Wheeler
17  error on appeal which Requires an automatic
18  Reversal of a conviction. See fed. R. crim. P. 52(b).
19  the Deputy Attorney General Also concedes that
20  trial counsel failed to make the Aforementioned
21  objection. See A.G.'s memorandum of Points and Authorities
22  Pg 8 Lines 11 and 12. (see exhibit B)
23                    Ground two
24        "BATSON VIOLATION"
25  Jury Selection was unconstitutionally tainted
26  when the Prosecutor excluded Qualified Jurors
27  on the basis of Race. This violated Petitioner's
28  Right to a Jury trial as Guaranteed by Amendments

1  six and fourteen to the u.s. constitution. See Batson v.
2  Kentucky 476 u.s. 79 (1986) During the Jury
3  Selections the Prosecutor Patrick Mattonel used the
4  Preemptory challenges to exclude all African American
5  Prospective Jurors based on race, which violated
6  Petitioners right to have a Jury trial of members
7  from a fair cross section of the community.
8  there were only two Potential African American
9  Jurors Available in which the Prosecutor excluded
10  both of them. See Johnson v. California 545
11  u.s. 162, 125 s. ct. 2410 (2005) California Supreme court
12  acknowledged that it was suspicious that all three black
13  Prospective Jurors were removed; were sufficient to establish
14  a Prima facie case. During the Jury voir dire Proceedings
15  the Prosecutor asked one Black male Prospective Juror
16  if he would be able to make a fair Decision and
17  the Black male Prospective Juror answered and told
18  the Prosecutor he will do what he thinks is
19  Right. afterwards the Prosecutor Questioned a
20  Black female Prospective Juror and After the
21  Questioning of Both these Potential Jurors, the
22  Prosecutor used the Preemptory challenges to
23  exclude Both of them and did not give a
24  Race nuetral Reason for Doing So. See
25  Paulino v. Castro 371 F.3d 1083 (9th cir. 2004) defendant
26  Can make Prima facie showing of bias by Prosecutor in
27  use of Peremptory challenges based on statistical
28  disparities alone. there were only two Available

Pg 8 of 21

1  African American Prospective Jurors and the
2  Prosecutor used the Preemptory challenges to exclude
3  both of them which is an overwhelming inference
4  of discrimination. See Johnson V. California supra
5  the Prosecutor excluded one hundred Percent of
6  the Prospective African American Jurors which violated
7  Petitioner's equal Protection clause Rights to have
8  members of his own Race Sit on the Jury.
9  See Avery v. Ga. 345 U.S. 559, 561(1953) Jury Selection
10  based on Race warrants reversal of Conviction
11  regardless of the Strength of the evidence Presented.
12  The Prosecutor did not give a Race nuetral Reason
13  to exclude the African American Jurors and
14  Because of the Prosecutor's omissions it PreJudiced
15  the defendant and caused a fundamental
16  constitutional error to the Petitioner and
17  Based on these facts Stated herein, habeas
18  Relief is warranted to the Petitioner. See Miller-EL
19  v. Dretke, 125 S.ct. 2317, 2340(2005) racial
20  discrimination during Jury Selection warrants
21  Habeas relief. the Attorney General's contention
22  that Petitioner cannot "identify" which Jurors the
23  Prosecutor challenged on Racial grounds and that
24  a Prima facie case of discrimination cannot be
25  established by Petitioner is not true. "Specifically
26  with reference to the Record During the
27  Preemptory challenges the Prosecutor asked the
28  Black male Prospective Juror if he would be able to

1  make a fair decision and the Black male
2  Prospective Juror answered and said exactly,
3  "I will do what I think is Right"(Quote)!
4  Petitioner Request the court to Look at the
5  Jury voirdire transcripts / Juror Questionaire and
6  You will find the Blackmales statement in
7  the exact words "I will do what I think is
8  right."(Quote)! (See A.G.'s memorandum of Points
9  and Authorities P98 Lines 24 and 25 P99 Lines 6 and 7).
10  it is Petitioners contention that the Prosecutor did not
11  give a race nuetral reason to exclude the Aforemen-
12  tioned Black male Prospective Juror. see Paulino V. Castro
13  371 f. 3d 1083(9th cir. 2004) at *1091- it does not matter that
14  the Prosecutor might have had good reasons to strike
15  the Prospective Jurors. "what matters is the real reason
16  they were Stricken". there was also a Black female
17  that the Prosecutor excluded. the Prosecutor
18  excluded the only two Black Prospective Jurors
19  who were Selected for the Preemptory challenges,
20  by doing this, the Prosecutor used the Preemptory
21  challenges to exclude one hundred Percent of
22  African Americans who were eligible to serve
23  on the Jury and as a result of the Prosecutors omissions
24  no African Americans Sat on the Jury. there is no
25  Lack of Specificity as the Deputy attorney general
26  asserts in her answer and there is no conclusory allegations
27  by the Petitioner in which I have stated accurate facts
28  in this matter. the Deputy Attorney general has

P9 10 of 28

with reference to the Jury voirdire transcripts; the Black femaL Said that
She works for muni. the Black male Said he is a Longshoreman.

1 applied an overtly stringent standard in regards to
2 Petitioner's Batson claim. The Deputy Attorney general
3 claims that race nuetral reasons were given by the
4 Prosecutors to exclude Jurors but does not make
5 reference in her answer to all Prospective Potential
6 Jurors. the Deputy Attorney general Cannot say
7 the Prosecutors made Race-neutral Reasons to exclude
8 Jurors when she does not make reference in her answer
9 to all Prospective Jurors of the Peremptory challenges.
10 See Johnson v. California 545 U.S. 162, 125 S. Ct. 2410 (2005)
11 California's "more likely than not" standard is an
12 in appropriate Yardstick by which to measure the
13 Sufficiency of a Prima facie case of Purposeful
14 discrimination in Jury Selection. the Prosecutors exclusion
15 of Prospective AfricanAmerican Jurors in state Court
16 Resulted in Plain Constitutional error to the Petitioner.
17 See O'Neal v. McANINCH, 513 U.S. 432, 130 L.Ed 2d 947.
18 115 S Ct 992 (1995) error violating federal Constitution
19 in state criminal trial held not harmless - and federal
20 habeas corpus Petitioner held reQuired to win - where habeas
21 Judge has grave doubt as to harmlessness.

22                    Ground three
23      I NEFFECTIVE ASSISTANCE OF COUNSEL
24              APPELLATE COUNSEL
25 Petitioner's appellate counsel was ineffective which
26 violated Petitioners right to counsel as guaranteed
27 by sixth and fourteenth amendments of the U.S. cons-
28 titution. See evitts v. LUCEY, 469 U.S. 387, 105 S. Ct.

1  <u>830.(1985)</u>, when appellate counsel was first assigned
2  to Petitioner in 2005 I requested a copy of my jury
3  voir dire transcripts so that I could file a collateral
4  Proceeding/writ of Habeas Corpus to raise a batson
5  wheeler claim. Upon informing my Appellate Attorney
6  of this information he replied and told me
7  that my claim was irrelevant and refused to
8  issue the jury voir dire transcripts as I had
9  Requested.(See exhibit F) After the Appellate
10 Counsel's refusal I wrote my trial attorney
11 about this matter and he informed me that my
12 appellate attorney was supposed to obtain
13 the juror voir dire transcripts for me.(See
14 exhibit G). Petitioner also wrote the state
15 Bar of California in Los angeles and they
16 informed me that they were very concerned
17 as to why the appellate counsel refused to
18 give me my jury voir dire transcripts(see
19 exhibit H) the appellate counsel's omission prejudiced
20 the Petitioner Because as a result of appellate
21 Counsel's refusal to obtain and issue to me a
22 copy of the jury voir dire transcripts, I could
23 not attach them a copies to my state writ of
24 Habeas corpus to Prove my wheeler error claim and
25 as a result of this my Petitions were denied
26 in the State Courts. <u>See Griffin v. Illinois. 351</u>
27 <u>U.S. 12, 100 L.Ed 891, 76 S.Ct. 585(1956) Criminal defendant</u>

28 <u>has right to record on appeal which includes complete</u>

See also Gardner v. California, 393 U.S. at 370(1969) noting no
suggestion made of an adequate substitute for a full transcript.

1  transcript of Proceedings at trial. (see exhibit B)
2  the Deputy Attorney General in her answer does not
3  address my claim of the appellate attorney's refusal
4  to give me an issue of the Jury voir dire transcripts
5  at all. the Jury voir dire transcripts were a Prerequisite
6  to a decision of the merits of my state writs of
7  Habeas corpus and the Jury voir dire transcripts
8  Situtation has not been addressed by the
9  State courts and neither the Deputy Attorney
10 General. in which this is a very crucial issue
11 and a substantial claim of my Petition in Regards
12 to a wheeler/Batson error and the failure of
13 State courts and Deputy Attorney General to address
14 this Situation seems Supicious.
15                    Ground four
16 MISINSTRUCTION ON ELEMENTS OF OFFENSE
17 The Jury verdict was rendered in the absence of Proper
18 instructions on every element of the offense. this
19 violated Petitioners right to a Jury trial as
20 guaranteed by amendments 6 and 14 of the U.S constitution.
21 See U.S. V. Gaudin, 515 U.S. 506, 115 S.ct. 2310 (1995),
22 fed. R. crim P. 52(b). During the Pretrial Proceedings my
23 trial attorney Requested that the Judge give to
24 the Jury a Jury instruction of assault as a
25 Lesser included offense to torture and the
26 Judge refused to do it. See James V. kentucky,
27 466 U.S. 341, 80 Led 2d 346, 104 S.ct. 1830 (1984) The Judge
28 failed/refused to give requested instructions. The

1  Supreme court reversed and Held that state statutes
2  did not take Precedent over constitutional Law and
3  that the Judge had to give the requested instruction,
4  when the trial Judge refused to give the Requested
5  instruction, it Relieved the State of its burden of
6  Proof on the critical Question of intent <u>see</u>
7  <u>francis v. franKlin, 471 u.s. 307, 85 L ed 2d 344, 105</u>
8  <u>Sct 1965 (1985) Sandstrom v. Montana, 442 u.s. 510,</u>
9  <u>61 Led 2d 39, 99 Sct 2450 (1979)</u> Trial courts instructions
10 cannot impermissibly shift the <u>burden of Proof</u>
11 <u>to the defendant,</u> (see exhibit I - R.T. 1009.)
12 when the Judge Refused to give the Requested
13 instruction, it omitted an essential element of
14 the charged offense. <u>see Hovicarey 332 f.3d</u>
15 <u>587 (9th Cir. 2003)</u> when a Jury instruction omits a
16 <u>necessary element of the crime; "constitutional</u>
17 <u>error has occurred."</u> the trial Judge's omission
18 was a Plain error and PreJudiced the Petitioner
19 Because it allowed the Prosecution to convict
20 me on adJudication of Less than beyond a Reasonable
21 Doubt. <u>see Carella v. California 491 u.s. 263, 109</u>
22 <u>S.ct. 2419 (U.s. Cal. 1989)</u> Due Process clause of the four-
23 <u>teenth amendment denies states Power to dePrive</u>
24 <u>the accused of liberty unless Prosecution Proves beyond</u>
25 <u>a reasonable doubt "every element" of the charged</u>
26 <u>offense; Jury instructions relieving states of this</u>
27 <u>burden violate a defendants due Process rights.</u>
28 (see exhibit I - R.t. 1009.) there was overwhelming

1. and uncontradictory evidence that Petitioner was
2. very heavily intoxicated for 10 days, each day prior
3. to, and on the day that the Petitioner was arrested
4. of Methamphetamine and when the trial Judge
5. Refused to give the Requested instruction
6. She unconstitutionally excluded the metham-
7. phetamine evidence. See U.S. v. Sayetsitty, 107 F.3d
8. 1405 (4th cir. 1997) at *1413 "in a Prosecution for a
9. specific intent crime, intoxication (although voluntary)
10. that precludes formation of the requisite intent may
11. be established as a defense" U.S. Supreme Court
12. Precedent has established that a defendant in
13. a Jury trial has a constitutional Right to
14. establish a complete defense and when the
15. Judge refused to give the requested instruction
16. to the Jury, I was deprived of that right.
17. See Crane v. Kentucky 476 U.S. 683, 106 S.Ct. 2142,
18. (1986) at *2147 "the Constitution guarantees Criminal defendants
19. "a meaningful opportunity to Present a complete defense."
20. the 9th circuit has established that courts must give a
21. defendant "wide Latitude" to establish evidence
22. in a crimal Proceeding, see U.S. v. Sayetsitty supra
23. stating that Parties may argue any reasonable inferences
24. from the evidence, and the court must give them
25. "wide latitude" to do so. (see exhibit I- R.t. 1009)
26. the Jury instructions by the Judge was constitution-
27. ally inadequate because they did not Permit the Jury
28. to consider Mitigating evidence such as intoxication

1  and a "Lack of a specific intent" because the
2  trial Judge unconstitutionally excluded such
3  evidence by failure to give a lesser included
4  offense instruction as to the torture charge.
5  See Penry v. Johnson, 532 U.S. 782, 784 the court in 2001,
6  held that mitigating evidence must be presented to
7  the Jury if such evidence meets the standard low
8  - threshold test for relevance. California Jury
9  instructions Rule 4.21 say's that if evidence shows
10 that a defendant was intoxicated you should consider
11 that fact in deciding whether a defendant had
12 the Required specific intent. (See exhibit J).
13 based on the evidence of intoxication the Judge
14 Should have gave a lesser included general
15 intent instruction as to the torture charge but
16 the Judge refused to do so. (See exhibit I- R.T. 1009)
17 See fiore v. white, 531 U.S. 225, 228-29 (2001) due Process
18 violated by conviction of defendant without Proving each
19 element of crime beyond a reasonable doubt.
20 the Deputy Attorney general contends that the Supreme
21 court has concluded a Defendant is entitled to a
22 Lesser included offense instruction in a capital
23 case. the Deputy Attorney general's contention
24 is not true. U.S. Supreme court Precedent has
25 held that a defendant is entitled to an Lesser
26 included offense instruction if the evidence warrants
27 it. See Keeble v. U.S. 412 U.S. 205 (1973) Defendant
28 is entitled to instruction on lesser included offense if

Pg 16 of 17

1 evidence would Permit Jury rationally to find him guilty
2 of the lesser offense and acquit him of the greater.

3 Ground Five

4 In Denying Petitioners claims of facts of the constitutional
5 errors stated within this Petition. The State Court
6 Came to Conclusions that were Contrary to Supreme
7 Court Precedent, see williams v. Taylor 529 u.s. 362
8 120 s.ct. 1495 (2000) the Supreme Court held that "contrary"
9 to means that a state court (1) arrived at a Conclusion
10 or Question of law opposite that Reached by the Supreme
11 court Precedent, or (2) when confronted with materially
12 indistinguishable facts from a Supreme Court Precedent,
13 arrived at an opposite Result. (See exhibit B)
14 the Deputy Attorney general Contends that the
15 State Courts Reasonably Concluded and Reasonably
16 Rejected Petitioners claims of Prosecutorial misconduct,
17 ineffective assistance of trial counsel, ineffective assistance
18 of appellate counsel and Refusal of Jury instruction.
19 the Deputy Attorney general's Contention is not true
20 and an unreasonable determination of the
21 facts. (See Deputy Attorney generals memorandum of
22 Points and authorities Pg 8 Line 13, Pg 12 Line 25, Pg 13
23 Line 10, Pg 6 Line 14). Petitioner filed state writ of
24 Habeas corpus in all State Courts and Requested an
25 evidentiary heaving which were denied. the State
26 Court's Denial of my writ of Habeas corpus claims
27 on ineffective assistance of counsel and Prosecutorial
28 misconduct withholding a evidentiary heaving

1  Was an **Objectively** unreasonable determination
2  of the facts. See Taylor v. Maddox 366 f. 3d 992, (9th cir
3  2004) when state court has made findings against
4  Petitioner on those facts "without first ordering a
5  evidentiary hearing. the states fact finding Procedure
6  is deemed "unreasonable which means the States factual
7  findings are not binding on federal Habeas corpus,
8  (See exhibit B) (See exhibit c). further more, Petitioner
9  diligently Pursued the Aforementioned claims in the
10 State courts and the writs of Habeas corpus were all
11 denied without first holding an evidentiary
12 hearing. therefore Petitioner Should receive an
13 evidentiary hearing before a decision is rendered
14 in this case. See williams v. Taylor. 529 U.S. 420
15 146 L.ed. 2d 435, 120 s.ct. 1479 (2000) Holding that because
16 Prisoner diligently Pursued claim in state court, and
17 was denied a hearing. he was entitled to a hearing
18 in federal court. Petitioner diligently Pursued factual
19 claims of ineffective assistance of counsel for
20 failure to object to the Prosecuters Discriminatory
21 use of the Peremptory challenges and the Prosecuters
22 exclusion of all blacks from the Jury based on
23 Race.(See exhibit B and c) Petitioner also tried to
24 obtain his voir dire transcripts from his appellate
25 attorney in which he denied.(See exhibit F) After
26 Petitioner was Denied the Jury voir dire transcripts by
27 his appellate counsel, I contacted my trial counsel
28 who told Petitioner that it was my appellate attorney's

1  Reasponsibility to obtain and issue the voir dire trans-
2  cripts to the Petitioner. (See exhibit 9) Petitioner
3  also tryed to obtain the Jury voir dire transcripts
4  from the appellate court and state writ of Habeas
5  Corpus and a subsequent writ of mandate which
6  were all denied (See exhibit D) (See exhibit E). as a
7  result of Being Denied the Jury voir dire transcripts,
8  Petitioner had no evidence to support his State
9  Writ of Habeas Corpuses. which were denied in
10 which the state court are culpable because they
11 Refused to give me the voir dire transcripts After
12 the Petitioner diligently Pursued them. (See
13 exhibit B). Petitioner made a formal complaint to
14 the State Bar of california about this matter
15 who Replied and informed me that they were concerned
16 as to why my appellate attorney Refused to obtain
17 and issue Petitioner's Jury voir dire transcripts
18 (See exhibit H) further more, During the State trial,
19 the trial Judge gave a Lesser included offense instruction
20 to aggravated mayhem and refused to give a Lesser
21 included offense instruction of torture which made
22 the trial unbalanced. (See exhibit I - R.t. 1009 &
23 R.t. 955). for all the reasons stated in Ground five,
24 Petitioner should receive an evidentiary hearing,
25 See townsend v.Sain 83 S.ct. 745. 372 U.S. 293 (1963) Federal
26 Court on habeas Corpus must hold evidentiary hearing if
27 applicant did not Receive full and fair evidentiary hearing
28 in state court, either at time of trial or in colateral Proceeding.

1 Petitioner needs the Jury voir dire transcripts as
2 a Discovery device to the fact that the Prosecutor
3 used the Preremptory challenges to exclude 100
4 Percent of the Prospective African American Jurors
5 Based on race. Petitioner has Diligently Pursued
6 the voir dire transcripts in the state courts
7 by way of writ of mandate and writ of Habeas
8 corpus but the Petitions were denied which
9 Prejudiced the Petitioner and Impeded me from
10 Litigating m/ claim of the Trial Prosecutors use
11 of the Preremptory challenges based on Race.
12 See Eskridge v. washington Prison Bd 357 U.S. at
13 215. 78 S. ct. at 1062. 2 L.ed. 2d 1269 1958 "noting
14 state's failure to show availability of trial notes")
15 (see exhibit D). also, Petitioner filed three
16 Seperate writ of Habeas corpus in Superior
17 court, First appellate district court, and the
18 California Supreme court with the factual claim
19 of trial Prosecutor Patrick Mahoney's use of
20 the Preremptory challenges based on Race which
21 Resulted in the exclusion of 100 Percent of all
22 Prospective African American Jurors and the
23 Aforementioned **state** courts denied the claim
24 without Possesion of or a review of the
25 Jury voir dire transcripts which further
26 Prejudiced the Petitioner of a opportunity to
27 decide the issues of the claim and Denied the
28 Petitioner a chance to Received a "full and fair

See Mayer v. City of chicago 404 U.S. 189 (1971) The state must Provide
FULL Verbatim record of criminal trial.—REvoir dire transcrips.

1  hearing". (see exhibit B) on July 31, 2008
2  the Deputy Attorney General Michele Swanson
3  filed the Jury voir dire transcripts under seal
4  which has further prejudiced the Petitioner
5  and Impeded my opportunity to Receive a full
6  and fair hearing and to Receive the Documen-
7  tary evidence of the trial Prosecutors exclusion
8  of all Prospective African American Jurors based
9  on race. the State court and the Deputy
10  Attorney General has Prevented the Petitioner
11  from Receiving the Jury voir dire transcripts
12  which are very crucial Portions of the Proceedings
13  and are needed to determine the facts
14  and a decision on the merits of this writ
15  of Habeas corpus. (see exhibit B)(See exhibit
16  D) and see the Deputy Attorney Generals Proposed
17  order to Seal the Jury voir dire transcripts
18  Dated July 31 2008. when the State courts and
19  the Deputy Attorney General Refused to disclose
20  the Jury voir dire transcripts to, the Petitioner
21  it has created a "Substantial and Injurious
22  effect" on the courts Decision in this matter.
23  See Kennedy v. Lochyer. 379 f. 3d 1041, 1054 (9th air
24  2004) failure to Provide Complete transcript of
25  Prior Proceedings had "Substantial and Injurious
26  effect" on the Jury's Verdict." the Deputy attorney
27  general Michele Swanson contends that the
28  Record does not Support the Petitioner's

1  contention of the trial Prosecutor's use of
2  Preemptory challenges to exclude all of the
3  Prospective African American Jurors based on
4  Race, the Deputy Attorney General has admitted
5  that the trial Prosecutor's use of the Preemptory
6  challenges is difficult to address on the
7  Record alone therefore the Deputy Attorney
8  General cannot Identify which of the
9  Prospective African American Jurors were
10 African American and the Deputy Attorney
11 General's contention that my allegation
12 are conclusory is absolutely false, I Don't
13 know how the Deputy Attorney General can
14 say my allegation is conclusory when
15 she has admitted that she can't identify
16 the ethnicity of any of the Prospective Jurors.
17 when the Petitioner alleges "Specific facts" which
18 if true would entitle him to relief see ortiz V.
19 Stewart 149 F 3d 923, 934 (9th cir. 1998) and the
20 truth of those facts cannot be determined
21 from the Record, an evidentiary hearing may
22 be appropriate, see BaJax Ducharme 187 f. 3d
23 1075, 1078 (9th cir. 1999) (see also townsend V. Sain
24 and Micheal williams V. Taylor Supra.)
25 (see Deputy Attorney general's answer, memorandum
26 of Points and Authorities P 9 8 Line 26) here the
27 Deputy Attorney general concedes that she can't
28 identify the ethnicity of the Prospective Jurors.

See Habeas corpus Local Rule 2254-7. evidentiary Hearing.
(u) Request for evidentiary Hearing.

1  Because of the conflict Between the Deputy
2  Attorney General and the Petitioner with
3  regards to the identity or ethnicity of the
4  Prospective African American Jurors the
5  Petitioner Request an evidentiary hearing
6  Before a Decision is made on the merits
7  of the trial Prosecutors use of the Preemptory
8  challenges to exclude all of the Prospective
9  African American Jurors Based on Race. the
10  Deputy Attorney General filed the voir dire
11  transcripts under seal on July 31 2008
12  which has Prevented the Petitioner from
13  obtaining the Documentary evidence of
14  the Prospective Jurors and Based on that
15  issue Petitioner Request an evidentiary
16  hearing. and finally because of ineffective
17  assistance of counsel. the trial Prosecutor Patrick
18  Mahoney's use of the Preemptory challenges to
19  exclude 100 percent of Prospective African American
20  Jurors Based on Race, and the trial Judge's
21  Refusal to give Requested Jury instructions.
22  Petitioner did not receive a fair trial and
23  these omissions Caused a fundamental Consti-
24  tutional error to the Petitioner. See Duncan v.
25  state of La. 88 S.Ct. 1444, 391 U.S. 145 (1968) a right to
26  Jury trial is granted to criminal defendants in
27  order to Prevent oppression by government U.S.C.A. Const
28  Amends 6, 14.

1                        ConcLusion
2  Based on the foregoing. Petitioner Should be granted
3  an evidentiary hearing on his claims, and the Petition
4  should ultimately be granted.
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20  Dated: 9-5-08
21
22                              Respectfully Submitted
23                              _Monte Haney_
24                              Monte L. Haney
                                in Pro Per
25
26
27
28

Pg 24 of 24

Case 3:07-cv-04682-CRB    Document 26    Filed 09/12/2008    Page 26 of 73

Monte Haney V 07-062 4A-28-59
Corcoran State Prison
P.O. Box 3476
Corcoran, CA 93212
In Pro Per

1
2

IN THE U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

3
4    Monte L. Haney,
                    Petitioner,
5              V.
6    Derral G. Adams, warden,
7                    Respondent,

No. C07-4682 CRB (PR)
notice of Lodging Records
Civil L.R. 1-5(e), Fed. R. Civ. P. 10(c)
& 11(a).

8    Petitioner Monte Haney Lodges the following exhibits in
9    connection with traverse and memorandum of Points and
10   Authorities in support there of.
     Exhibit A:
11   Page 6 of writ of habeas corpus with continuation Page No. C07-4682.
12   Exhibit B: State writ of habeas corpus. Denial of claims ineffective
13   assistance of counsel and Prosecutor exclusion of 100 Percent of
14   African American Prospective Jurors based on race without holding
15   evidentiary hearing. true and correct. (take Judicial notice).
16   Exhibit C: Motion for evidentiary hearing that was Denied in State
17   Supreme Court.
18   Exhibit D: Writ of Habeas corpus and writ of mandate Requesting Jury
19   voir dire transcripts that was Denied in State court.(take Judicial notice).
20   Exhibit E: Letter from first district appellate Pro Ject in my Request
21   for Jury voir dire transcripts.
     Exhibit F
22   Letter to and from appellate Attorney william cafriola Request and
23   Denial of Jury voir dire transcripts. true and correct.
24   Exhibit G: Letter from trial Attorney Randy montesano who informed
25   me that my appellate Attorney could have obtained Jury voir dire
26   transcripts.
27   exhibit H: Letter From State Bar who informed me that they were
28   concerned that I did not Receive my Jury voir dire transcripts (take Judicial notice).

①

notice of Lodging Records
CIV L.R. 1-5(e) Fed. R. Civ. P.
10(c) + 11(a)

Exhibit I: Reporter's transcript. RE Denial of Requested Jury instruction Pg 1009. (take Judicial notice.)(Pg 955 take Judicial notice.)

Exhibit J: CaL Jic 4.21.

Exhibit K: Brainspect Imaging Report and transcript with Discussion of that matter.

Date: 9-5-08

Respectfully Submitted

Monte Hardy

②

# EXHIBIT

# A

## EXHIBIT A

1  need more space.  Answer the same questions for each claim.

2      [Note:  You must present ALL your claims in your first federal habeas petition.  Subsequent

3  petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4  499 U.S. 467,  111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5      Claim One: trial Judge Carrol Yaggy refused to give

6  Requested Jury instructions to the Jury,

7      Supporting Facts: My trial Attorney Requested that the Judge

8      Carrol Yaggy give a Jury instruction of P.C. 245 Assault as

9  a Lesser included offense to torture and she refused see notice of Lodging

10  Records exhibit A lines 18 to 25, 19 to 22, & 19 1009 lines 13 to 18 also there was

11  uncontradictory evidence that I was intoxicated,
    Claim Two: ineffective assistance of Appellate and trial counsel

12

13      Supporting Facts: My trial Attorney refused to object to the fact

14  that the Prosecutor Patrick Mahoney used the Preemptory

15  challenges to exclude All African Americans from the Jury Panel

16  my appellate attorney did not raise arguable issue in my Appellate
    Brief that I Received 3 convictions for one crime & one course of Conduct see Post trial

17  Motion 094 H.
    Claim Three: Prosecutor Misconduct vindictive Prosecution

18  Denial of right to Jury of Petitioners Peers.

19      Supporting Facts: The Prosecutor Patrick Mahoney used the

20  Preemptory challenges to exclude all African Americans from my

21  Jury as a result I was Deprived of the right to a Jury of fair Cross

22  section of the community, The Prosecutor did not give a race inuetral
    reason to exclude All African Americans from my Jury,

23      If any of these grounds was not previously presented to any other court, state briefly which

24  grounds were not presented and why:

25  These grounds were raised in writ of Habeas Corpus.

26

27

28

PET. FOR WRIT OF HAB. CORPUS          - 6 -

Continuation of Claim Two

Also my Appellate Attorney Refused to obtain the Jury voir dire Record as I Requested him to do and he refused to raise the fact in my Opening Brief as I Requested that he do and he could of done if he would have obtained my Jury voir dire Record transcripts to Substantiate the claim. See People v. Valenzuela (1986) 175 Cal.3d 381, 392, 222 Cal Rptr 409.

# EXHIBIT

# B

# EXHIBIT B

ENDORSED
F I L E D
San Francisco County Superior Court

APR 1 1 2007

BY: _____ CARLOS BARRAZA
                        Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE CITY AND COUNTY OF SAN FRANCISCO

Department No. 22

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF | ) ) |
| | ) WRIT NO. 5517 |
| MONTE HANEY | ) ) SUPERIOR COURT NO. 2052283 |
| Petitioner, | ) ) |
| FOR A WRIT OF HABEAS CORPUS | ) ORDER ) ) |

On February 23, 2007, Petitioner Monte Haney ("Petitioner") filed a Petition for Writ of Habeas Corpus. A jury convicted Petitioner of: (1) aggravated mayhem; (2) torture; (3) aggravated assault; (4) assault with a deadly weapon; (5) willful infliction of corporal injury on a cohabitant; and (6) criminal threats. The court sentenced Petitioner to life in prison with the possibility of parole plus seven years.

**A.   Background**

Petitioner appealed his sentence. On appeal, he contended that the torture conviction must be overturned because the trial court failed to instruct the jury that aggravated assault was a lesser included offense of torture. He also claimed that the aggravated assault conviction must be stricken as a lesser included offense and that the court sentenced him under the wrong subsection of Penal Code section 120227. On December 20, 2006, the First District Court of Appeals rejected Petitioner's first two

1    contentions but modified the judgment to comport with the jury's
2    findings on the great bodily injury enhancement.

          Petitioner also filed a petition for a writ of habeas corpus
     with the First District Court of Appeal. On July 20, 2006, the
4    Court of Appeal denied the petition on the grounds that Petitioner
     had not exhausted his administrative remedies nor provided a record
5    sufficient to allow informed appellate review.

6         **B.    Petitioner's Current Habeas Petition**

7         Petitioner seeks habeas relief on the following grounds: (1)
     his trial and appellate counsel violated his right to effective
8    assistance of counsel; (2) the trial judge improperly refused to
     instruct the jury on lesser included offenses; and (3) the trial
9    judge, the prosecuting attorney and the public defender "conspired
     to illegally and unlawfully sentence" him and to vindictively
10   prosecute him.  For the reasons discussed below, the Court rejects
     these claims and denies the petition.
11

12            **1.    Petitioner's Ineffective Assistance of Counsel**
                     **Claims**
13

14        Over two years after his conviction, Petitioner now claims
     that his trial counsel provided ineffective assistance of
15   counsel because he apparently failed to "properly investigate
     claims and defenses of [Petitioner's] charges."  (Petition for
16   Writ of Habeas Corpus ("Petition") at 5.)  More specifically,
     Petitioner claims that his trial attorney failed to obtain a
17   urine sample taken from Petitioner and, as a result, he was
     "deprived of his right to obtain a jury determination on every
18   material issue presented by the evidence."  (Petition at 5.)
     Petitioner does not explain how his counsel's alleged failure to
19   obtain the urine sample prejudiced him or deprived him of his
     right to have a jury determine every material issue presented by
20   the evidence.

21        "To establish ineffective assistance of counsel . . . a
     defendant must show that counsel's representation fell below an
22   objective standard of reasonableness under prevailing professional
     norms, and that counsel's deficient performance was prejudicial,
23   i.e., that a reasonable probability exists that, but for counsel's
     failings, the result would have been more favorable to the
24   defendant."  (*Strickland v. Washington* (1984) 466 U.S. 668, 687-
     688; *People v. Waidla* (2000) 22 Cal.4th 690, 718.)
25

1        Petitioner's claims about his trial counsel's performance
2    have no merit for three reasons.  First, Petitioner has not
    provided any evidence to support his claims.  (*See People v.*
    *Duvall* (1995) 9 Cal.4th 464, 474.)  Conclusory allegations made

4    (*People v. Karis* (1988) 46 Cal.3d 612, 656; *see also In re Swain*
    (1949) 34 Cal.2d 300, 303-304.)  Second, even assuming
5    Petitioner's claims about his attorney's conduct at trial are
    accurate, his claims fail because he has not demonstrated that
6    his counsel's performance "fell below an objective standard of
    reasonableness" and that there is a reasonable probability that,
7    but for counsel's alleged errors, "the result of the proceeding
    would have been different."  (*People v. Ledesma* (1987) 43 Cal.3d
8    171, 218.)  "When a defendant challenges a conviction, the
    question is whether there is a reasonable probability that,
9    absent the errors, the factfinder would have had a reasonable
    doubt respecting guilt."  (*Id.* at 218, citing *Strickland, supra,*
10   466 U.S. at 693-94].)

11       Finally, Petitioner's ineffective assistance of counsel
12   claim fails because he has failed to justify the nearly two-year
    delay between the trial and the date he filed his habeas
13   petition.  Although "denial of ineffective assistance of counsel
    is one trial error which is cognizable on collateral review
14   whether or not it was raised on appeal . . . any significant
    delay in seeking collateral relief on this ground must be fully
15   justified."  (*People v. Jackson* (1973) 10 Cal.3d 265, 268.)
    Petitioner has not justified his delay, and the Court rejects
16   his ineffective assistance of trial counsel claim for this
    additional reason.
17

18       Next, Petitioner claims his appellate counsel provided
    ineffective assistance by refusing to raise issue of the denial
19   of Petitioner's right to a "jury trial of [his] peers" claim on
    appeal.  (Petition at 8.)  "Peremptory challenges may not be
20   used to systematically exclude jurors because of membership in a
    cognizable group distinguished by racial, religious, ethnic or
21   similar characteristics."  (Cal. Crim. Law, Practice and
    Procedure (2006) § 29.30 p. 862, citing *People v. Wheeler* (1978)
22   22 Cal.3d 258, 276 and *Batson, supra,* 476 U.S. at 84; *see also*
    Cal. Code Civ. Proc. § 231.5.)  It is well settled, however,
23   that appellate counsel "performs *properly* and *completely* when he
    or she exercises discretion and presents only the strongest
24   claims instead of every conceivable claim."  (*In re Robbins*
    (1998) 18 Cal.4th 770, 810, emphasis in original.)  In the
25   Petition, Petitioner states that his appellate attorney sent him

1   a letter in June 2006 notifying him that "the fact that
    [Petitioner] had no African Americans on [his] jury . . . had no
2   merit in his case." (Petition at 5.) Petitioner does not
    attach a copy of this letter to his writ petition, nor does he
3   on appeal.

4

5        As an initial matter, Petitioner has not provided any
    documentary evidence to support his claim that the prosecutor
6   systematically excluded African Americans from the jury.
    (Duvall, supra, 9 Cal.4th at 474.) As discussed above,
7   conclusory allegations made without any explanation of their
    basis do not warrant relief. (Karis, supra, 46 Cal.3d at 656;
8   Swain, supra, 34 Cal.2d at 303-304.) Second, Petitioner has not
    alleged any circumstances supporting a reasonable inference that
9   the prosecutor challenged African Americans because of their
    membership in a group, rather than because of any specific bias.
10  (People v. Box (2000) 23 Cal.4th 1153, 1188.) Finally,
    Petitioner's claims with respect to his appellate counsel's
11  performance fail because he has not demonstrated that his
    counsel's performance "fell below an objective standard of
12  reasonableness" and that there is a reasonable probability that,
    but for counsel's alleged errors, "the result of the proceeding
13  would have been different." (Ledesma, supra, 43 Cal.3d at 218.)
14  For these reasons, this Court must reject this ground for habeas
    relief.
15

16               2.    **Petitioner's Claim That the Trial Judge Failed to
                       Instruct the Jury on Lesser Included Offenses**

17       Next, Petitioner claims that the trial judge refused to
    instruct the jury that aggravated assault is a lesser included
18  offense of torture. (Petition at 7.) Petitioner raised this
    issue on appeal and the First District considered, and rejected,
19  it. As "a general rule, '[h]abeas corpus will not serve as a
    second appeal.'" (In re Harris (1993) 5 Cal.4th 813, 825, citing
20  In re Foss (1974) 10 Cal.3d 910, 930.) Because "the issue was
    previously raised and rejected on direct appeal, and because the
21  [P]etitioner does not allege sufficient justification for the
    issue's renewal on habeas corpus, the issue is procedurally
22  barred from being raised again." (Harris, supra, 5 Cal.4th at
23  825; see also In re Sakarias (2005) 35 Cal.4th 140, 145.)
    Accordingly, this Court rejects Petitioner's claim for relief on
24  this ground.

25  ///

1

2       **3.   Petitioner's Claim That the Trial Judge, the
             Prosecuting Attorney and the Public Defender
             "Conspired to Illegally and Unlawfully Sentence"**

4
        Finally, Petitioner contends that the trial judge, the
5   prosecutor and the public defender conspired against him and
    "subjected [him] to vindictive prosecution." (Petition at 6.)
6   This Court cannot conduct a meaningful review of this claim because
    Petitioner has not provided any evidentiary support. (*Duvall,*
7   *supra,* 9 Cal.4th 464, 474.)

8       Moreover, Petitioner has not justified the lengthy delay
    between when the jury was sworn and the filing of his writ
9   petition. Under well-established California law, a petition should
    be filed as promptly as the circumstances allow. (*In re Clark*
10  (1993) 5 Cal.4th 750, 765). Where there has been significant delay
    in seeking habeas corpus relief, a petitioner must justify or
11  explain the delay. (*Id.*) To avoid the bar of untimeliness, the
    petitioner has the burden of establishing: (1) the absence of
12  substantial delay; (2) good cause for the delay; or (3) that the
    claim falls within an exception to the bar of untimeliness.
13  (*Robbins, supra,* 18 Cal.4th at 781.) Petitioner cannot meet this
    burden here because he offers no justification whatsoever for his
14  delay in seeking habeas relief. His petition is devoid of any
    facts demonstrating good cause for the delay or that his claim
15  falls within an exception to the bar of untimeliness. (*Id.* at 781;
    *Clark, supra,* 5 Cal.4th at 775.)
16

17

18      For the foregoing reasons, Petitioner's Petition for Writ of
    Habeas Corpus is DENIED.

19

20  _____              _____
    Date                                 Judge of the Superior Court
21

22

23

24

25



IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| In re MONTE HANEY,<br><br>    on Habeas Corpus. | A116381<br><br>(San Francisco County<br>Super. Ct. No. 189793) |

**FILED**

JAN 1 8 2007

Court of Appeal - First App. Dist.
DIANA HERBERT
By_____
              DEPUTY

BY THE COURT:

The petition for writ of habeas corpus is denied.

(Ruvolo, P.J., and Reardon, J., joined in the decision.)

**RUVOLO, P.J.**

Date: JAN 1 8 2007 _____ P.J.

S152455

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

---

In re MONTE HANEY on Habeas Corpus

---

The petition for writ of habeas corpus is denied.

SUPREME COURT
FILED

SEP 1 2 2007

Frederick K. Ohlrich Clerk

---

Deputy

**GEORGE**

---

Chief Justice

# EXHIBIT

# C

## EXHIBIT C

Monte Haney #V-72062 4A-2R-08
Corcoran State Prison
P.O. BOX 3476
Corcoran, CA 93212

## SuPreme Court of California

Monte Haney
        VS.

Warden, Derral g. Adams

Motion for evidentiary Hearing, Pursuant to 28 U.S.C. 2254(d)(1)

Petitioner, Monte Haney Request an evidentiary Hearing as authorized thru statute and case Law Micheal williams V. taylor.

this Request for evidentiary hearing is Based on grounds that state executive officials violating my federal constitutional Rights Based on Decisions "Contrary" to Federal law and U.S. Supreme Court Precedents, ordinances, Judicial Decrees and/or Decisions.

therefore as Authorized and mandated by state law and State Court Procedure, I the Petitioner Monte L. Haney is compelled to file this Motion for evidentiary hearing and therefore Diligently Seeks Authorization from State Court and government a grant of evidentiary hearing Requesting that state Court executive officials who were involved in my trial court and Appellate Court Process explain why they made their decisions in which my contention are Contrary to established federal law and federal legislation Decisions.

See Micheal Williams V. Taylor, 2000 Daily Journal D.A.R. 3467 Supreme Court of United States Decision Pg 3972 Dated Wednesday 4-19-2000. Diligence will require in the usual case that the Prisoner, at a minimum, seek an evidentiary hearing in state court in the manner Prescribed by state law.

See Page 3971 A Prisoner who developed his claim in state court and can Prove the state court's decision was 'contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." is not barred from obtaining relief by §2254(d)(1). See Williams V. Taylor at (opinion of O'Connor J.).

See 28 U.S.C. 2254(d)(1)(2000) in Williams V. Taylor, the Supreme Court held that "contrary to" means that a state court (1) arrived at a conclusion or Question of law opposite that Reached by the Supreme Court, or (2) when Confronted with materially indistinguishable facts from a Supreme Court Precedent, arrived at an opposite Result. See 529 U.S. 362, 405 (2000).

In Febuary 2005 I Received a Jury trial by trial Judge Carol Yaggy in San Francisco Superior Court Dept. 28. During the Jury trial and Course of Jury instructions my trial Attorney Requested that the trial Judge give instructions to the Jury that Assault as a Lesser included offense to torture and the Judge refused to give the requested instruction/admonition. (See notice of Lodging Records Exhibit A Pg 1009 Line 13 to 18).

See James V. Kentucky 466 US 341, 80 Led 2d 346, 104 Sct 1830 (1984) The Judge refused to give requested instructions, the Supreme Court reversed and held that state statute DID not take Precedent over Constitutional law and that the Judge had to give the requested instruction/admonition stare decisis.

trial Judge Carrol Yaggy refusal to give the requested Jury instruction was a "clear error" Also, Simutaneously When the Judge refused to give the requested instruction to the Jury she violated my federal Constitutional Rights of the 5th and 14th amendment Procedural Due Process

that I was extremly intoxicated at the time of the Alleged crime. So when Judge Carrol Yaggy refused to give the requested Jury instruction she Deprived me of my federal constitutional Right to have the Jury make a Determination and Decision Based on every element of the crime. (see notice of Lodging Records Exhibit A Pg 1009 13 to 18, Pg 1006 lines 19 to 22 and Pg 1008 lines 18 to 25).

see US V. Gaudin, 515 US 506, 132 L.ed 2d 444. 115 S.ct 2310 (1995) failure to submit "entire" element of crime to Jury, when Properly Preserved request is made, is treated as structural and is "reversible error" without reguard to harm. See US V. gaudin at

#2310, Due Process and sixth amendment give criminal defendant right to have Jury determine, beyond reasonable doubt, guilt of every element of crime with which defrndant is charged u.s.c.a. Consti. Amend 5, 6, 14.

✝trial Judges carol Yaggy's failure and omission to give the Requested Jury instruction to the Jury trial resulted in "structural error" in which she showed callous Disreguard to my constitutional Rights Leaving the Jury with the option of finding me guilty of torture or not guilty of any crime at all therefore violating my constitutional Rights of the fifth and sixth amendment to the U.S. constitution to receive an fair and Impartial Jury trial.

see Sullivan v. Louisiana 113 S.ct. 2078, 508 U.S. 275 (1993) constitutionally deficient reasonable doubt instruction re Quires reversal of Conviction, and is not amenable to harm less error analysis. U.S.C.A. Const Amend 6. see Sullivan v. Lousiana at #2083 the other consisting of "structural defects" which affect the framework within which trial Proceeds" Id at 310 Ill s.ct at 1265 an. reQuire automatic reversal. There is a "strong Presumption" that any error will fall into the first of these categories. The Court hold today that the reasonable-doubt instruction given at Sullivan

[41]

in Case V. Louisiana 498 U.S. 39, 111 S.ct. 328, 112 L.ed 2d 339 (1990) [Per Curiam] amounts to structural error, and thus cannot be harmless reguardless of How overwhelming the evidence of Sullivans guilt. Where the Jury views the evidence from the lens of a defective reasonable doubt instruction, the Court Reasons there can be no factual findings made by the Jury beyond a reasonable doubt in which an appellate court can ground its harmless - error analysis, see ante at 2082.

it is my contention that when Judge Carrol Yaggy refused to give the requested Jury instruction/Admonition to Jury of Assault, as a Lesser included offense of torture she violated my federal constitutional rights of Procedural Due Process of the 5th and 14th amendment. Also the Judge did not follow CalJIC Rule 4.21 "voluntary intoxication when relevant to specific intent, which say's the Court should consider that fact in deciding whether defendant had the required specific intent mental state, and it is my contention that I DID not have the "mental state" to be found guilty of the specific intent to commit a crime of torture, and Judge Caral Yaggy's failure and omission to give Assault as a Lesser included instruction to the Jury was clearly Defective in which the Materiality, relevance, of My Severe intoxication in the matter was the Prime Mover in which the Judge was supposed to give the requested instruction According to U.S. Supreme Court Precedent, See Case V. Louisiana 498 U.S. 39, 112 L.ed 2d 339, 111 S.ct 328 (1990) Reasonable doubt instruction which initially instructed that to convict guilt mus be found beyond reasonable doubt, but which then equated " reasonable doubt with "grave uncertainty" and actual substantia doubt" and stated that what was required was "Moral certainty" that defendant was guilty, could have been interpreted by reasonable Juror as allowing finding of guilt based on degree of proof w that required by due Process clause U.S.C.A. const amend 14

see other controlling case law, stewfelt v. Alaska 228 f 3d 1088
9th cir. 2001 "structural errors call into question the very accuracy
and reliability of the trial Process and thus are not amenable
to Harmless error analysis, but require automatic reversal.
see Ho v. carey-when a Jury instruction omits a necessary
element of the crime, constitutional error has occurred.
Ho v. carey, 332 f 3d 587 (9th cir. 2003),
see Menendez v. Terhune. 422 f 3d 1012 (9th cir. 2005) error in Jury
nstructions may so infect a trial that the resulting conviction
violates Due Process.  Based on the Aforementioned facts, (see notice
of lodging records, Exhibit A trial transcripts Pg 1009 lines 13 to 18, Pg 1006
lines 19 to 22 and Pg 1008 lines 18 to 25) in the fair Administration of
Justice", I request that the court grant an Evidentiary hearing
for the Judge Carol Yaggy come to court and explain why she
refused to give the requested Jury instruction in which her
failure/and omission to Do so have violated supreme court Precedent
and my federal constitutional rights of the fifth and fourteenth
amendment to Procedural Due Process and Also sixth amendment right to
an Impartial Jury trial. See chapman v. cal 386 us at 23 n.8 right to Impartial Judge not harmless error
see Lil Jerberg v. Health ser v. corp. 486 U.S. 847. 100 Led 2d 855, 108
Sct 2194 (1988) Right to a fair trial is basic Requirement of Due Process
and includes right of unbiased Judge.

and 2. the trial Prosecutor Patrick t. Mahoney used the Preemptory
challenge to exclude All African Americans from my Jury Panel.
During the Jury selection Process I observed Patrick Mahoney Question
Potential African American Jurors who were eligible to be Part of
the Jury and in the exclusion of these potential Jurors Prosecutor
Patrick Mahoney gave no Logical Reasoned basis to exclude
them.
See. trevino v. texas 503 US 562, 118 Led 2d 193, 112 Sct 1547 (1992)
and Batson v. Kentucky 476 U.S. 79, 90 Led 2d 69, 106 Sct 1712 (1986) Fundamental
Premise of Batson and its Progeny is that criminal Defendants and excluded
urors alike are denied equal Protection of Laws when trial Jury is
onstructed in racially discriminatory manner.

(b)

Ground 3. On or about August, 2005 I wrote my ex appellate Attorney and informed that I thought that the Prosecutor used the Preemptory challenges to exclude all african Americans from my Jury and I Requested that my appellate Attorney william J. Capriola Raise it as a collateral issue in a wende Brief, and my appellate Attorney refused and told me that is irreliant, it is my Contention that any diligent Attorney would have Raised any legitimate arguable issue for his client. and by appellate Attorneys william J. Capriola failure to do so I Receive ineffective assistance of appellate Counsel. as a result of appellate Attorney's william J. Capriola omission, I filed a formal Complaint against him to Los angeles state Bar RE: inquiry number 07-15816 as a result the State Bar wrote and told me that they were Concerned about my Complaint and instructed my appellate Attorney william J. Capriola to Contact me and Alleviate the Situation but william J. Capriola failed and/or refused to do so. See Evits v. Lucey 469 U.S. 387, 83 L.ed2 821, 105 S.ct 830 (1985) Defendants right to effective assistance of Counsel applies not Just at trial but also on direct appeal. see Also Delgado v. Lewis 223 f.3d 976, 980-82 (9th cir 2000) ( appellate counsel's failure to raise any arguable issues in a appellate brief was ineffective assistance. my appellate Attorney william J. Capriola Also refused to obtain my "Jury voir dire" transcripts. I wrote Several Letters to william J. Capriola and Requested that he obtain and issue my Jury voir Dire transcripts and he refused. (see notice of Lodging Records Exhibit 9). it is my Contention that william J. Capriola omission to obtain and issue the Jury voir dire transcripts Impeded my opportunity to Present a Cognizable Legal Claim. See Griffin v. illinois 351 US 12, 100 L.ed 891, 76 S.ct 585 (1956) Criminal Defendant has right to Record on Appeal which includes Complete transcript of Proceedings at trial. See Also Cooper-Smith v. Palmateer 397 f.3d 1236, 1239 n.4, 1242 (9th cir 2005) though Court Presumes factual findings are correct in effective assistance of Counsel is a mixed Question of law and fact not entitled to Presumption of Correctness.

In the Proper Administration of Justice I Request that Judge Carol Yaggy Prosecutor Patrick Mahoney and appellate Attorney william J. Capriola be SUBPOENA to Court for an evidentiary hearing in which I will also be Present.

I would Like to bring Attention to the Court that I have a writ of Habeas Corpus Pending in this Matter No. 515 2455 filed May 4 2007

[signature]
8-14-07

# EXHIBIT

# D

# EXHIBIT D

ENDORSED
F I L E D
San Francisco County Superior Court

MAY 2 3 2007

GORDON PARK-LI, Clerk
BY: ___MARIA GONZALEZ___
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE CITY AND COUNTY OF SAN FRANCISCO

Department No. 22

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF | ) ) ) |
| | ) WRIT NO. 5558 |
| MONTE HANEY | ) ) ORDER |
| Petitioner, | ) ) |
| FOR A WRIT OF HABEAS CORPUS | ) ) |

On April 12, 2007, Petitioner Monte Haney ("Petitioner") filed a Petition for Writ of Habeas Corpus. Petitioner asks the Court to provide him with a copy of the "jury voir dire record transcripts."

**A.   Procedural History**

A jury convicted Petitioner of: (1) aggravated mayhem; (2) torture; (3) aggravated assault; (4) assault with a deadly weapon; (5) willful infliction of corporal injury on a cohabitant; and (6) criminal threats.  The trial court sentenced Petitioner to life in prison with the possibility of parole plus seven years.  Petitioner appealed his sentence.  On December 20, 2006, the First District Court of Appeal rejected Petitioner's first two contentions but modified the judgment to comport with the jury's findings on the great bodily injury enhancement.  On April 18, 2007, the Supreme Court denied review.

On February 23, 2007, Petitioner filed a Petition for Writ of Habeas Corpus in this Court on the following grounds: (1) his trial

1  and appellate counsel violated his right to effective assistance of
2  counsel; (2) the trial judge improperly refused to instruct the
   jury on lesser included offenses; and (3) the trial judge, the
   prosecuting attorney and the public defender "conspired to
4  prosecute him. On March 27, 2007, this Court denied his petition.[1]

5      **B.    Petitioner's Request for Voir Dire Transcripts**

6      In his current petition, Petitioner contends that this Court
   must provide him with "jury voir dire record transcripts" because
7  he is an "indigent prisoner." (Petition for Writ of Habeas Corpus
   at 3.) He claims that he needs the voir dire transcripts because
8  he is in the process of preparing a "Federal writ of Habeas
   Corpus." (Attachment to Petition for Writ of Habeas Corpus at
9  3:15-19.) As discussed below, Petitioner is not entitled to
   receive a free copy of the voir dire transcript because he has not
10 demonstrated how the transcript will assist him in connection with
11 his federal habeas corpus petition.

12     Courts consider two factors to determine whether the
   defendant has demonstrated a need for a transcript: (1) the
13 transcript's value in connection with the proceeding for which
   it is sought; and (2) the availability of alternative devices
14 that would fulfill the same function as the transcript. (*Britt
   v. North Carolina* (1971) 404 U.S. 226, 227-230; *see also* Cal. R.
15 Ct. 8.324(b)(2)(A) [requiring the application for additional
   records to "describe the material to be included and explain how
16 it must be useful to appeal"].) Petitioner has not met his
   burden here because he does not explain why he needs the
17 transcripts for his federal habeas corpus petition.

18

19     For the foregoing reasons, Petitioner's Petition for Writ of
   Habeas Corpus is DENIED.
20

21  _5/23/07_                                  _____
   Date                                       Judge of the Superior Court
22  _____                          JAMES J. McBRIDE

23 [1] Petitioner also filed a Petition for Writ of Habeas Corpus in the
   California Supreme Court. On October 11, 2006, the California
24 Supreme Court denied the petition.

25

1

2

ENDORSED
F I L E D
San Francisco County Superior Court

OCT  4 2008

GORDON PARK-LI, Clerk
BY: ____ CARLOS BARRAZA ____
Deputy Clerk

3

4

5

6

7    **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
     **FOR THE CITY AND COUNTY OF SAN FRANCISCO**

8
     Department No. 22

9

10

11   —————————————————— )    WRIT NO. 946
                        )
     **Monty HANEY**    )
12       Petitioner     )
                        )
13       **vs.**        )    ORDER DENYING
                        )    PETITION FOR WRIT
14   **SUPERIOR COURT OF SAN FRANCISCO**  )  OF MANDATE
                        )
15       Respondent;    )
     —————————————————— )
                        )
16                      )
     **PEOPLE OF THE STATE OF CALIFORNIA**  )
17       Real Party in Interest.  )
     —————————————————— )

18

19
         This Court has received a petition for writ of mandate.
20

21
         In the petition, Monty Haney ["Petitioner"] complains that
22
     Department 22 of this Court ["Respondent Court"] erred in
23
     denying his petition for writ of habeas corpus requesting
24
     transcripts of the jury voir dire proceedings at his trial.
25
     //

                                                              1

1    Section 1985 of the California Code of Civil Procedure

2  states the circumstances under which a court may issue a writ of

3  mandate.  The section authorizes a court to issue a writ of

4  mandate to any inferior tribunal "to compel the performance of

5  an act which the law specially enjoins … or to compel the

6  admission of a party to the use and enjoyment of a right … to

7  which the party is entitled, and from which the party is

8  unlawfully precluded by such inferior tribunal."  (*Cal. Code of*

9  *Civ. Pro.* § 1085, subd. (a).)

10

11    Here, a writ of mandate is not proper because the Court

12  would not be issuing the writ to an inferior tribunal.

13  Petitioner is requesting Department 22 of the Superior Court to

14  issue the writ to itself.  Because section 1985 of the

15  California Code of Civil Procedure does not authorize the remedy

16  requested, the petition for writ of mandate is DENIED.

17

18

19

20

21  _19 Sept. 2007_         Charles d Rauer

22  Date                    Judge of the Superior Court

23

24

25

2

# EXHIBIT

# E

# EXHIBIT E

# FIRST DISTRICT APPELLATE PROJECT

730 Harrison Street, Suite 201• San Francisco, California 94107 • (415) 495-3119 • Facsimile: (415) 495-0166

March 26, 2007

Mr. Monte Haney, V-72062
4A1L43
Corcoran State Prison
P.O. Box 3476
Corcoran, CA 93212

Re: *People v. Monte Haney*, A110037

Dear Mr. Haney:

    This office has received your letter regarding the transcripts in your case. After consulting with your counsel on appeal, William Capriola, I was informed that no voir dire transcripts were prepared for your appeal. This is not unusual, since voir dire is not transcribed as part of the normal record on appeal. Thus there are no voir dire transcripts which can be forwarded to you.

    If you believe that the transcripts of your voir dire are important to your federal petition for writ of habeas corpus, you may attempt to get them directly from the individual court reporter from your trial. That court reporter can be contacted via the superior court clerk's office. Good luck.

Sincerely,

STEPHANIE CLARKE
Staff Attorney

cc: William Capriola

# EXHIBIT

# F

# EXHIBIT F

Monte Haney V-72062 4A1L43          2-27-07
Corcoran state Prison
P.O. BOX 3476
Corcoran, CA
93212

1
2
3

william J. Capriola
P.O. BOX 1536
Sebastopol, CA
95473

4
5

Hello Mr Capriola! Approximately a week ago I Receiv
my transcripts. I need to Know if the Supreme court
has made a decision on the Petition that you file
Also, I need Documentation of Jurors names, race etc,
Voidire List, Venire Pool, Voter registration List, Jury
Selection Process etc. would You Please Provide all
of the above information Immediatly? Also, wha
are my options as far as continuing my appeal?
Previously I asked you to Raise the claim that
there were no blacks on my Jury and You told me
it was irrelevant. Would You tell me why You
think it was irrelevant?

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# WILLIAM J. CAPRIOLA

### *Attorney at Law*

March 26, 2007

Monte Haney, V-72062
Corcoran State Prison
P.O. Box 3476
Corcoran, California 93212

Post Office Box 1536
Sebastopol, California 95473
707 • 829 • 9490 tel/fax

Re:    *People* v. *Haney*, A110037

Dear Mr. Haney:

Thank you for your correspondence. Your petition for review is stilling pending in the California Supreme Court. As for the juror voir dire transcripts, I didn't send them to you because I don't have them. Voir dire is not part of the normal record on appeal. In order to be made part of the record, there must be some indication that the voir dire transcript may contain a potentially meritorious appellate issue. There was no evidence of this in your case. I recognize you believe your rights were violated because there were no African-Americans on your jury. However, as I told you before, since your trial attorney did not raise any objection to the composition of the jury, there was no issue for me to raise on appeal.

Very truly yours,

William J. Capriola

# EXHIBIT

# G

# EXHIBIT G

# RANDY MONTESANO

Attorney at Law
214 Duboce Avenue, San Francisco, CA  94103
415-431-8226 — 415-255-8631 - fax
rmontesano@hotmail.com

**LEGAL MAIL**

April 4, 2007

Monte Haney
#V-72062  4A2R-8
Corcoran State Prison
P.O. Box 3476
Corcoran, CA  93212

Dear Monte:

In response to your letter dated 3/29/07, regarding obtaining transcripts of the voir dire, that is something I cannot help you with. The transcripts of the voir dire proceedings should and could have been obtained by your appellate lawyer at no cost to you before the filing any briefs. If he did not obtain them, the only way to get them is to contact the court reporter and order them through her. The problem is you will have to pay for that and that is very expensive. Unfortunately, as I said before, I cannot be of any help to you in this regard.

Why your former appellate attorney will not communicate with you is a mystery to me. In any event, I am sorry to hear you lost your appeal and wish you the best of luck in your habeas petition.

Regards,

Randy Montesano

RM/dma
/encls

# EXHIBIT

# H

# EXHIBIT H



**THE STATE BAR**
**OF CALIFORNIA**
1149 SOUTH HILL STREET, LOS ANGELES, CALIFORNIA 90015-2299

OFFICE OF THE CHIEF TRIAL COUNSEL
INTAKE

TELEPHONE: (213) 765-1000
TDD: (213) 765-1566
FAX: (213) 765-1168

May 29, 2007

Monte Haney
V72062 4AIL 43
Corcoran State Prison
P.O. Box 3476
Corcoran, CA. 93212

RE:  Inquiry Number:        07-15816
     Respondent:            William John Capriola

Dear Mr. Haney:

You have complained that William John Capriola has been discharged and not returned your documents to you. Your complaint concerns us. However, it is hoped that bringing your complaint to the attorney's attention will resolve this matter.

We have advised the attorney to contact you within ten (10) working days from the date of this letter, regarding the availability of your client file. Under the Rules of Professional Conduct, the attorney is not required to mail or deliver the file to you. Whether you, or a designee, pick up the file from the attorney's office or the attorney mails the file to you, is a decision to be made between you and the attorney.

Should the attorney fail to contact you within the specified time, please recontact the State Bar. At that time, we will determine if further action is needed.

At this time, your complaint file is being closed, without prejudice.

Very truly yours,

NJO

# EXHIBIT

# I

# EXHIBIT I

1    The interesting issue there is -- which I think is a little

2  different here, but I just want to make a record -- in that case

3  there were many allegations of assault with a deadly weapon and

4  there was lots of weapons that were used.  I think there were

5  chains, a tire iron, a couple other things.  And in looking at

6  the information -- as well as, I think, other -- I don't know if

7  there was just a soft or a simple 245(a)(1) with just force

8  likely to produce great bodily injury without a weapons

9  allegation.

10    In the context of this case, as alleged in Count 3, which is

11  the torture count, the People have alleged, both in terms of the

12  use of a deadly weapon -- and I think my position to be very,

13  very clear -- is that this case is not a torture case, but for

14  the popping out of the eye, which a jury could find was nothing

15  more than -- well, among other things, but in the context of

16  torture, they should have the option of finding that that is

17  just an assault with force likely to produce great bodily

18  injury.

19    And it's my contention that that's really what this is.

20  And, therefore, because of that, I would argue and request that,

21  with respect to the torture charge, that the 245(a)1 be a

22  lesser-included and should be given.

23    **THE COURT**:  245(a)1, assault by means of force likely to

24  produce great bodily injury?

25    **MR. MONTESANO**:  Correct.

26    **THE COURT**:  All right.  Mr. Mahoney.

27    **MR. MAHONEY**:  Yes, Your Honor.

28    Upon review of Martinez and specifically, I believe, the

1008

```
1   have an element of torture or if you have a charge of torture,
2   and when you look at the underlying facts for the torture charge
3   here, but for her eye coming out, this no way would be a torture
4   case.  It just wouldn't be.  Because if you had a torture case
5   in that scenario, every assault would be, automatically be, a
6   torture case.  Every attack upon any individual would
7   automatically be a torture case.  It would blur the distinctions
8   here.  It's clear that it's certainly arguable that if the eye
9   comes out, they can make that kind of an argument for many
10  different reasons.
11      And it seems to me that by leaving in an allegation there
12  that oh, there was a deadly weapon used, sort of is a distortion
13  of and misuse of this particular charge.  And now they can just
14  sort of throw in a deadly weapon allegation every time there's a
15  torture charge when, in fact, the deadly weapon really has
16  nothing to do with the actual torture charge that's before the
17  Court.
18      So I guess what I'm asking the Court to do is look through
19  this artificial technical pleading thing that they have done,
20  "they" being the prosecution, and analyze it in a way, and
21  really consider that an assault with force likely to produce
22  great bodily injury, which occurred in this case because of her
23  eye being taken out, is really the essence of the torture charge
24  and that, therefore, this is and should be given as a
25  lesser-included.
26      THE COURT:  The Court has reviewed the Martinez case
27  carefully and has also reviewed our case carefully, and I think
28  if the only allegation in this case was the removal of the eye
```

1  with the hand, if that were the only allegation, I think there

2  might be some argument for what you described under Martinez,

3  but that's not the only allegation we have here.  We also have

4  several stab wounds that have been alleged.  Those have been

5  alleged with a deadly weapon.

6      And so this case presents us with a combination of

7  assaultive behavior that, in the charging, that that combination

8  of all those things is part of the charging, and I don't think

9  it's the Court's function to decide what act is the essence of

10  the torture charge.  I think that is precisely what a jury is to

11  decide, whether or not the acts were committed and, if they were

12  committed, whether they constitute torture.

13      So because we have both actions relating to the use of hands

14  alone and deadly weapon allegations, I don't think that Martinez

15  serves as authority for me to find that, in this case, that a

16  245(a) by means of force likely to produce great bodily injury

17  is appropriate as a lesser-included offense, so that request is

18  denied.

19      **MR. MONTESANO:**  Okay.

20      **THE COURT:**  All right.  I have provided counsel with copies

21  of the instructions.  I'd ask you to review them.  If you see

22  anything that's a glaring problem or error, please let me know.

23  I tried to put them in the order I thought was appropriate.

24      And I'll take a recess now, we will come back, we will start

25  with instructions.  Depending on what time I finish, I indicated

26  that we will take a five-minute break after I finish, anyway, to

27  give everybody a break.  Then we will start with Mr. Mahoney's

28  argument.  Because my instructions may take an hour or so, it

1    AGGRAVATED MAYHEM IS COUNT 3.

2        **MR. MAHONEY:**  2.

3        **THE COURT:**  IT'S 2.

4        **MR. MONTESANO:**  AND I PUT "AND ANY LESSER CRIME TO COUNT 2,"

5    THEN, BECAUSE THAT IS A GENERAL INTENT CRIME.

6        **THE COURT:**  RIGHT, BECAUSE THAT LESSER IS THE MAYHEM WHICH

7    IS A GENERAL INTENT CRIME.

8        **MR. MONTESANO:**  I'M SORRY, YOUR HONOR.

9        **THE COURT:**  SO, I AGREE, "ANY LESSER CRIME AS TO COUNT 2."

10       **MR. MONTESANO:**  "AS TO COUNT 2."  AND I THINK THAT'S ALL.

11   THEN YOU GOT TO DEAL WITH -- OH, WE ALREADY DID THE ALLEGATIONS,

12   SO, YEAH, THAT'S IT.  THEN IT GOES DOWN TO, "THERE MUST EXIST,"

13   AND I THINK EVERYTHING ELSE IS THE SAME.

14       **MR. MAHONEY:**  YES.

15       **THE COURT:**  ALL RIGHT.  MADE THOSE CHANGES.  3.31 THE

16   SPECIFIC INTENT ONE.  SO THIS WOULD BE COUNTS 1 --

17       **MR. MONTESANO:**  I PUT IN "THE CRIMES CHARGED IN COUNTS 1, 2,

18   3 AND 7," AND THEN I PUT "AND IN THE" -- "AND ANY LESSERS TO

19   COUNT 1 AND ALSO THE SPECIAL ALLEGATION AS TO COUNT 1 THERE MUST

20   EXIST" -- AND THE ISSUE'S GOING TO BE WHETHER THERE'S OTHER OF

21   COURSE SPECIFIC INTENT CRIMES ALLEGED, WHICH I DON'T THINK THERE

22   IS, WITH TORTURE, AGGRAVATED AND CRIMINAL THREAT.  WE'RE ONLY

23   TALKING ABOUT COUNT 1.

24       **THE COURT:**  THAT'S RIGHT.

25       **MR. MONTESANO:**  SO WE HAVE TO DEAL WITH THE SPECIAL

26   PREMEDITATION, AND THEN WE HAVE TO DEAL WITH THE ATTEMPTED

27   VOLUNTARY MANSLAUGHTER.  HOWEVER THE COURT IS COMFORTABLE DOING

28   THAT, WHATEVER LANGUAGE YOU WANT, BUT THAT'S THE SUBSTANCE OF

# EXHIBIT

# J

# EXHIBIT J

4.21    EXEMPTIONS AND DEFENSES    Part 4

## CALJIC 4.21

### VOLUNTARY INTOXICATION—WHEN

#### INTENT

In the crime[s] of _Penal code 206 and_
[206,] [and ___,] of which
the defendant is accused in Count[s] ___, [or
that of ___, which [is a] [are] lesser
crime[s] thereto,] [or in the allegation that
___] a necessary element is the exis-
tence in the mind of the defendant of the [spe-
cific intent to ___] [mental state[s] of
___].

If the evidence shows that the defendant
was intoxicated at the time of the alleged
crime, you should consider that fact in deciding
whether defendant had the required [specific
intent] [mental state].

If from all the evidence you have a reason-
able doubt whether the defendant formed that
[specific intent] [mental state[s]], you must find
that [he] [she] did not have that [specific intent]
[mental state[s]].

USE NOTE

Penal Code section 22, subdivision (b) specifies that intoxi-
cation is admissible solely on the issue of whether or not the
defendant actually formed a required specific intent, premeditated,
deliberated or harbored express malice aforethought, when murder
or a specific intent crime is charged. _definition action of ill will_

If the trial includes crimes requiring both general and specific
intent, or a particular mental state, use CALJIC 4.21.1.

However, do _not_ give this instruction where there is evidence of
voluntary intoxication in cases charging assault with a deadly
weapon on a peace officer, assault with a deadly weapon, or simple

192

# EXHIBIT

# K

## EXHIBIT K

*"Change Your Brain, Change Your Life"*

Amen Clinics, Inc
A Medical Corporation

Daniel G. Amen, MD
Director

## BRAIN SPECT IMAGING REPORT

Date: 8/31/2004

Patient Name: Haney, Monte
Referring Professional: Atty. Randy Montesano

Studies and Dates Performed:
Resting study: 8/19/2004
Concentration study: 8/12/2004

The concentration scan was performed under the following medications:  None

**Brain SPECT Information:**
Brain SPECT scans help delineate the brain physiology underlying psychiatric and neurological problems and may or may not fully correlate with the clinical diagnoses, since the diagnosis of many psychiatric and neurological problems are based on symptoms clusters and not on underlying brain problems.   Clinical correlation is essential for this information to be used appropriately.

**Brain SPECT Findings and Conclusions:**
The most significant finding on this study is overall decreased perfusion, seen on both scans, worse with concentration.

1: Overall decreased perfusion seen with concentration, and moderate scalloping seen at rest.

2: Brain trauma.  The pattern of findings is consistent with brain trauma.  These findings include.

3: Decreased perfusion in the left inferior orbital prefrontal cortex seen on both studies, worse with concentration, and decreased anterior prefrontal cortex perfusion seen on both studies.

4: Decreased left and right temporal lobe perfusion seen on both studies.

5: Decreased left and right parietal lobe perfusion seen with concentration, and decreased right parietal lobe perfusion seen at rest.

| Southern California | Northern California | Pacific Northwest | Washington D.C. Area |
|---|---|---|---|
| 4019 Westerly Pl. #100 | 350 Chadbourne Road | 3315 S 23rd Street | 1875 Campus Commons Dr #101 |
| Newport Beach, CA  92660 | Fairfield, CA  94585 | Tacoma, WA  98405 | Reston, VA  20191 |
| (949) 266-3700 | (707) 429-7181 | (253) 779-4673 | (703) 860 5600 |
| Fax (949) 266-3750 | Fax (707) 429-8210 | Fax (253) 779-8969 | |
| www.amenclinics.com | | www.brainplace.com | |

**Recommendations:**

Given this constellation of findings, if the clinical symptoms warrant, one might consider:

1. An anticonvulsant (such as Neurontin, Trileptal, Lamictal, Gabatril, Depakote, or Tegretol) to calm focal areas of increased activity and/or stabilize temporal lobe function, enhance mood stability, and/or calm irritability. Current research suggests that Neurontin is good for patients with irritability or anxiety, while Depakote and Lamictal are better for patients who have bipolar spectrum tendencies. A supplement alternative might be GABA.

2. A stimulating antidepressant, such as Effexor, to enhance prefrontal cortex function and calm cingulate and thalamo-limbic hyperactivity. A supplement alternative might be St. John's Wort or 5HTP plus SAMe or L-tyrosine.

3. A memory enhancement protocol, that would include the following (for adults):
   - Both physical and mental exercise, to boost nerve growth factors in the brain,
   - Avoid any behaviors that increase the risk for a brain injury,
   - Fish oil to boost the level of omega-3 fatty acids in the brain,
   - Alpha Lipoic Acid, 100 - 300mg twice a day, for its antioxidant effects,
   - Acetyl-L-Carnitine, 500-1,000mg, 2 to three times a day,
   - Vitamin E 400 international units twice a day and Vitamin C 250mg twice a day as antioxidants,
   - Phosphatidal Serine: 100mg twice a day for 2 weeks then 100mg three times a day for memory (if appropriate),
   - Gingko Biloba (Ginkoba, Ginkgold): 60-120mg twice a day for energy, concentration and focus (to enhance cerebral blood flow),
   - Low dose ibuprofen (100-200mg a day) to increase blood flow and help decrease beta amyloid plaques that may be involved in causing memory problems,
   - Coenzyme Q10 (CoQ10) to help with energy and memory, especially if Parkinson's disease is present or in the family. The dose of CoQ10 is 100 – 400 mg/day.

**See Appendix I for a technical description of the study parameters.**

**See Appendix II for a rating sheet with a detailed analysis of each brain region.**

**See Appendix III for more explanation about the findings.**

**See Appendix IV for labeled illustrations that you can compare to your actual SPECT images to see where the findings on the scan are located.**

**See Appendix V for detailed information about brain systems and how we interpret their function at the Amen Clinics.**

Sincerely,

Daniel G. Amen, MD
CEO, Amen Clinics, Inc.
Board Certified in Child, Adolescent, and Adult Psychiatry
Licensed in Nuclear Brain Imaging

| Southern California | Northern California | Pacific Northwest | Washington D.C. Area |
|---|---|---|---|
| 4019 Westerly Pl. #100 | 350 Chadbourne Road | 3315 S 23rd Street | 1875 Campus Commons Dr #101 |
| Newport Beach, CA  92660 | Fairfield, CA  94585 | Tacoma, WA  98405 | Reston, VA  20191 |
| (949) 266-3700 | (707) 429-7181 | (253) 779-4673 | (703) 860 5600 |
| Fax (949) 266-3750 | Fax (707) 429-8210 | Fax (253) 779-8969 | |

www.amenclinics.com                    www.brainplace.com

1    most incredible thing that he said:  When I looked at this man

2    two years later, this is as good as he gets.  The closer in time

3    to what was going on, in my opinion, he said, it would be much

4    worse.

5        And Myla Young, Dr. Myla Young, in her own way said pretty

6    much the same thing.  And the reason is because Dr. Amen said

7    it, Dr. Young said it.  If you take that brain, as bad as it is,

8    and then you add what we have here -- one of these runs,

9    prolonged, sustained, methamphetamine abuse, and what it does to

10   the brain -- and then throw in some sleep deprivation on the

11   side, it's exponentially worse.

12       And again, Dr. Amen told you about his qualifications, told

13   you about all the things, many of the things that he does, how

14   he makes presentations to bar associations, to legal entities,

15   how he was called up by a judge to say:  I need somebody to

16   evaluate this person.  I know of your reputation, I know the

17   kind of work you do.  I would like you to do this for me and get

18   involved in this case.  We have all sorts of stuff like that.

19   This man has looked at, he said 25,000, but you got to cut it in

20   half because of two scans per brain.  You're talking about

21   somebody that's looked at, read, reviewed, analyzed, evaluated

22   over 12,000 brains.

23       And wasn't it interesting that Dr. Smith, who's in a

24   completely different field -- remember, he is in addictive

25   medicine, he knew about Dr. Amen.  He knew about the value of

26   SPECT imaging.  He told you about that.  We heard from Dr.

27   Young.  She told you the same thing.  I'm a neuropsychologist.

28   I've been doing it since '89 or '90, whatever it was.

## PROOF OF SERVICE BY MAIL

I, Monte Haney _____, declare that I am over 18 years of age, and a party to the attached herein cause of action, that I reside at California State Prison at Corcoran, in the County of King, California.

My mailing address is: P.O. Box 3476 Corcoran CA 93212

_____

On _____, 20____, I delivered to prison officials for mailing, at the above address, the attached: traverse, memorandum of Points and authorities in support thereof consisting of 71 Pages total.

in sealed envelope(s), with postage fully prepaid, and addressed to the following:

(1) clerks office _____ (2) _____

U.S. District court - No. Dist. of CA

450 Golden Gate Avenue, 16th Floor

Sanfrancisco, CA 94102 _____

(3)_____ (4)_____

_____

_____

_____

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed this 5 day of September, 2008, at California State Prison, Corcoran.

_Monte Haney_____

In Pro Per

Monte Haney v-72062 4A-2R-59
Corcoran State Prison
P.O. Box 3476
Corcoran, CA 93212

RECEIVED SEP 1 1 2008

Attn: clerk of the Court
& the honorable Judge
Clerk's Office
U.S. District Court-N
450 golden gate Ave.
San francisco, CA 94111

CORCORAN STATE PRISON



CA Penal Code 2601 Confidential Correspondance
Legal Mail